Harvey A. PENCE, As Conservator of the Property of Vivian M. Meissner, Appellee,

v.

Brian S. RAWLINGS, Appellant,

and

Francis Dale Rawlings, Defendant.

Brian S. RAWLINGS, Appellant,

v.

Harvey A. PENCE, Conservator of Vivian M. Meissner, Appellee.

No. 88–1642.

Court of Appeals of Iowa.

Jan. 25, 1990.

Thomas P. Lenihan, Des Moines, for appellant.

Patrick W. Brooks of Brooks, Ward & Trout, Marshalltown, for appellee.

Heard by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

HAYDEN, Judge.

At the time this case came to trial, Vivian Meissner was 93 years old. She is a widow without children or close relatives. She lived in her own home in Marshalltown. There is a small apartment on the second floor which she has occasionally rented.

In the fall of 1985, Brian Rawlings' father, Dale, learned of the vacant apartment. Although Meissner was initially reluctant to rent again, she changed her mind and agreed. Rawlings and his two-year-old son moved in just before Thanksgiving. He had three felony convictions for breaking and entering. Rawlings was released after serving ten and one-half months and was on probation when he moved into the Meissner apartment.

Rawlings began helping Meissner by performing a variety of household chores and other odd jobs. He also helped with her finances.

In the fall of 1986, Meissner had a will prepared, leaving her house and $5,000 to her tenant. During this period, she purchased a 1985 Cadillac valued at $19,000 and had the car placed in Rawlings' name as well as hers.

On April 12, 1987, Meissner sold her homestead by contract to Rawlings, retaining a life estate for herself. In addition, she sold her 1985 Cadillac and 1970 Oldsmobile to Dale Rawlings, as well as certain time certificates, savings accounts, jewelry and other items of personal property. These transfers were allegedly in "trust" for Meissner. Each of these transfers required $1.00 in consideration.

On April 13, 1987, Harvey Pence was appointed the conservator of the property of Vivian Meissner, pursuant to a voluntary petition filed by Meissner.

In August 1988, Pence filed two petitions. One petition was for the replevin of certain automobiles and other items of property transferred by the ward to the defendants. The other petition was to quiet title in the Meissner's homestead which she had transferred to Rawlings. Following trial, the district court found a confidential relationship existed and these transfers were invalid as a product of undue influence. Rawlings appealed that ruling.

In December 1988, Rawlings filed a claim in probate seeking the reasonable value of his labor and materials for the maintenance of the homestead in reliance of the April 12 real estate conveyance. The district court dismissed this claim, finding it a compulsory counterclaim to the initial action. Rawlings' appeal from this ruling has been consolidated with the prior appeal by order of the supreme court.

Rawlings maintains the conservator failed to carry his burden of establishing by clear proof a confidential relationship existed between himself and Meissner. He further contends Pence failed to prove all the elements necessary for a finding of undue influence in the transfer of her real property. He lastly maintains the trial court erred in determining his claim is a compulsory counterclaim.

The trial court found there was clear, satisfactory, and convincing evidence a confidential and fiduciary relationship existed between Meissner and Brian Rawlings. Because defendant did not meet his burden of showing the advantage he procured was without undue influence, the trial court voided the conveyance of real estate. We concur.

 The conservator's action to quiet title to the real estate conveyed by Meissner is an action in equity. We give weight to the factfindings of the trial court but are not bound by them. Iowa R.App.P. 14(f)(7). *Matter of Estate of Herm*, 284 N.W.2d 191, 199 (Iowa 1979). This also applies to this court's review of the finding a confidential and fiduciary relationship existed. *Id.*

■ A confidential relationship arises whenever a continuous trust is reposed by one person in the skill and integrity of another. *Id.* It has been said that all the variety of relations in which dominion may be exercised by one person fall within the general term confidential relation. *Id.*

■ The evidence clearly points to a confidential relationship. Brian Rawlings was integrally involved in the daily conduct of Meissner's life. The defendant's own evidence established a very close, almost parent-child relationship. Rawlings was also involved in Meissner's daily financial affairs. This confidential relationship even extended to the preparation of the documents of transfer in this case.

■ Where a confidential relationship exists, a transaction by which the one having the advantage profits at the expense of the other will be held presumptively fraudulent and voidable. *Daughton v. Parson*, 423 N.W.2d 894, 898 (Iowa App.1988). The burden then shifts to the claimant to negate the charge of undue influence by clear and convincing proof. *Id.* at 896.

■ The evidence produced by defendant does not rise to the level of clear and convincing proof the transfer was made without undue influence. We agree with the trial court the evidence establishes the opposite.

Contrary to defendant's contention, all of the elements of undue influence are proven. The four elements necessary to establish undue influence are:

1) the testator must have been susceptible to undue influence; 2) the person alleged to have exercised undue influence must have had the opportunity to exercise it; 3) the person must have had the disposition to influence the person unduly for the purpose of procuring an improper favor; and 4) the result must clearly appear to be the effect of undue influence.

*Matter of Estate of Henrich*, 389 N.W.2d 78, 83 (Iowa App.1986).

There is ample evidence in the record of Meissner's confusion and forgetfulness. She would often have to contact bank personnel several times in one day because she was unable to recall completing transactions or receiving answers to her questions. She was highly susceptible to the defendant's influence because she was extremely dependent upon him.

The opportunity to exercise undue influence is obvious. Rawlings lived with Meissner and, at some point, monitored her telephone calls and visitors.

Evidence of defendant's disposition to influence is found in the will dated July 7, 1987, which was prepared by Brian Rawlings and which left most of Meissner's property to him. Additionally, the documents drawn up which transferred Meissner's property were prepared by Rawlings, as well.

The results clearly indicate defendant's undue influence. All of Meissner's real and personal property, valued in excess of $100,000, was transferred to Rawlings and his father.

We conclude there is substantial evidence in the record to establish all of the elements of undue influence.

■ The trial court was correct in dismissing Rawlings' claim in probate to recover the value of labor, materials, and money provided for Meissner's real estate. The court concluded this claim was a compulsory counterclaim under Iowa Rule of Civil Procedure 29 and, thus, should have been raised in the previous litigation.

■ A claim is a compulsory counterclaim if it: 1) arises out of a transaction or occurrence that is the basis of another's claim; 2) is then matured; 3) is not the subject of a pending action; and 4) is held by the pleader against the opposing party and does not require the presence of indispensable parties. *Harrington v. Polk County Federal Savings & Loan Assn. of Des Moines*, 196 N.W.2d 543, 545 (Iowa 1972).

The test utilized by Iowa courts to determine whether a claim arises out of the same transaction or occurrence is whether there is a logical relation between the plaintiff's claim and the counterclaim. *Id.* The

logical relationship between the undue influence in the transfer of real estate and Rawlings' claim he provided the labor, services, and materials to improve this property is obvious.

A compulsory counterclaim is mature when the person possessing it is entitled to a legal remedy. *Stoller Fisheries v. American Title Ins. Co.*, 258 N.W.2d 336 (Iowa 1977). The labor and services were already provided and the money had already been loaned. Thus, the claim was matured.

There were no indispensable parties whose presence was required and there was no other pending litigation.

Rawlings' claim was a compulsory counterclaim and was correctly dismissed.

We find there was a confidential relationship between Brian Rawlings and Vivian Meissner, and undue influence in the transfer of real estate and personal property. The property is properly returned to the Vivian M. Meissner Conservatorship.

AFFIRMED.